IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NATHANIEL WILLIAMS,

    Petitioner,            No. CIV S-06-0347 MCE CHS P

  vs.

CLAUDE E. FINN, et al.,

    Respondents.         FINDINGS AND RECOMMENDATIONS

_____/

I.    INTRODUCTION

      Petitioner Nathaniel Williams is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the May 4, 2005, decision by the Board of Parole Hearings (hereinafter Board) finding him unsuitable for parole. Upon careful consideration of the record and the applicable law, the undersigned will recommend that this petition for habeas corpus relief be denied.

/////
/////
/////
/////
/////

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts

The Board recited the facts of petitioner's commitment offense as follows:

PRESIDING COMMISSIONER ANGELE: Thank you. All right, Mr. Williams, you're serving a life term for the murder of one Porfino Perez (phonetic), is that true?
INMATE WILLIAMS: Correct.

PRESIDING COMMISSIONER ANGELE: This occurred on February 24th, 1981, is that also correct?

INMATE WILLIAMS: Correct.

PRESIDING COMMISSIONER ANGELE: Now as best I can figure out you and your crime partner, Ray Williams, no relationship, - -

INMATE WILLIAMS: No relationship.

PRESIDING COMMISSIONER ANGELE: - - was it your objective to get that truck?

INMATE WILLIAMS: Yes.

PRESIDING COMMISSIONER ANGELE: Okay. Was Mr. Perez and his brother lot attendants?

INMATE WILLIAMS: I'm not sure.

PRESIDING COMMISSIONER ANGELE: Okay, but were they in possession of the truck?

INMATE WILLIAMS: Yes.

PRESIDING COMMISSIONER ANGELE: This was a restaurant?

INMATE WILLIAMS: Yes.

PRESIDING COMMISSIONER ANGELE: Okay. Were they in physical possession, I mean - -

INMATE WILLIAMS: They were standing next to the truck.

PRESIDING COMMISSIONER ANGELE: So you don't know if they had anything at all to do with the truck, do you?

INMATE WILLIAMS: Yes, the guy that I was getting the truck

|   | |
|---|---|
| 1 | for knew them and he wanted the wheels off the truck. |
| 2 | PRESIDING COMMISSIONER ANGELE: Okay, but do you know if this was the Perez's truck? |
| 3 | INMATE WILLIAMS: Yes. |
| 4 | PRESIDING COMMISSIONER ANGELE: It was their truck? |
| 5 | INMATE WILLIAMS: Yes. |
| 6 | * * * |
| 7 | PRESIDING COMMISSIONER ANGELE: All right, thank you. You were armed? |
| 8 | INMATE WILLIAMS: Right. |
| 9 | PRESIDING COMMISSIONER ANGELE: Was your crime partner? |
| 11 | INMATE WILLIAMS: No. |
| 12 | PRESIDING COMMISSIONER ANGELE: Okay. Now Mr. Perez and I believe it was his brother. |
| 13 | INMATE WILLIAMS: Yes, Herman Perez. |
| 14 | PRESIDING COMMISSIONER ANGELE: We have Herman Perez and Porfino Perez. |
| 16 | INMATE WILLIAMS: Yes. |
| 17 | PRESIDING COMMISSIONER ANGELE: Didn't speak English. |
| 18 | INMATE WILLIAMS: No. |
| 19 | PRESIDING COMMISSIONER ANGELE: Okay, and apparently weren't able to totally understand what you were doing there? |
| 20 | INMATE WILLIAMS: Correct. |
| 21 | PRESIDING COMMISSIONER ANGELE: Okay. Now you pulled a gun out. |
| 23 | INMATE WILLIAMS: Right. |
| 24 | PRESIDING COMMISSIONER ANGELE: It would be obvious to me that a gun speaks all sorts of different languages, they knew something was coming down. |
| 26 | INMATE WILLIAMS: Correct. |

3

| | |
|---|---|
| 1 | PRESIDING COMMISSIONER ANGELE: But you only showed them the gun, you stuck [it] back in your pocket, is that also correct? |
| 2 | |
| 3 | INMATE WILLIAMS: Well I pulled a gun out, pointed it at Porfino and I demanded the keys to the truck. |
| 4 | |
| 5 | PRESIDING COMMISSIONER ANGELE: Okay. |
| 6 | INMATE WILLIAMS: But he couldn't understand English. |
| 7 | PRESIDING COMMISSIONER ANGELE: Didn't understand keys in Spanish? |
| 8 | INMATE WILLIAMS: Yes. |
| 9 | PRESIDING COMMISSIONER ANGELE: Okay. |
| 10 | INMATE WILLIAMS: And he tried to take the gun away from me. |
| 11 | |
| 12 | PRESIDING COMMISSIONER ANGELE: Did you put it in your pocket first? |
| 13 | INMATE WILLIAMS: Yes, I put it in my pocket. |
| 14 | PRESIDING COMMISSIONER ANGELE: Okay, and that he - - what happened? |
| 15 | INMATE WILLIAMS: Then he tried to take the gun from me. |
| 16 | PRESIDING COMMISSIONER ANGELE: It was in your pocket though? |
| 17 | |
| 18 | INMATE WILLIAMS: Yeah, (inaudible). |
| 19 | PRESIDING COMMISSIONER ANGELE: And what happened? |
| 20 | INMATE WILLIAMS: We had a struggle and I was able to get loose from his grip and I turned to leave and as I was leaving I turned around and pointed and shot him twice in the chest. |
| 21 | |
| 22 | PRESIDING COMMISSIONER ANGELE: Any reason why you didn't just leave? |
| 23 | |
| 24 | INMATE WILLIAMS: I was scared, I was humiliated that it didn't go the way we planned it. I was scared basically. |
| 25 | PRESIDING COMMISSIONER ANGELE: You were 17? |
| 26 | INMATE WILLIAMS: Yes. |

4

> * * *
>
> PRESIDING COMMISSIONER ANGELE: Why did you want the wheels off the truck?
>
> INMATE WILLIAMS: This guy Bunking (phonetic) was going to give me 500 dollars, he had a truck, the same kind of truck, he wanted the wheels to put on his truck.

/////

Answer, Exhibit B at 15-20.

On January 6, 1982, petitioner pled guilty to one count of first degree murder and was sentenced to a term of 25-years to life. Answer, Ex. A. On May 4, 2005, the Board held a life parole consideration hearing for petitioner. Id. at 6. At the conclusion of that hearing the Board found petitioner unsuitable for parole. Answer, Ex. B at 76-80.

B. State Habeas Review

Soon after he was found unsuitable for parole petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court. Answer, Ex. C. That petition was denied on September 26, 2005 in a reasoned opinion. Answer, Ex. D at 53-55.

Petitioner then filed a petition with the California Court of Appeals on October 21, 2005. Answer, Ex. E. That petition was summarily denied on November 2, 2005. Answer, Ex. F. Petitioner finally petitioned the California Supreme Court for review on November 9, 2005. Answer, Ex. G at 129. That petition was summarily denied on January 25, 2006. Mr. Williams filed this federal petition on February 17, 2006.

III. APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas

corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

IV.  DISCUSSION OF PETITIONER'S CLAIMS

Petitioner argues eight grounds for relief that fall into three categories of issues: the Board failed to set petitioner's "primary term"; the Board had a "no parole policy"; and the Board used erroneous findings to supports its denial. Petition at 4-12.

    A.    Failure to Fix a "Primary Term"

        1)    Description of Claim

Petitioner argues that the Board failed to set his "primary term" and that he had a right to a fixed primary term independent of suitability. Petition at 9.

/////

1          2)      <u>State Court Opinion</u>

         The Los Angeles County Superior Court rejected this claim stating that "[p]etitioner agreed to an indeterminate term with a maximum of <u>life</u>. As such, he has no vested right in anything less than the maximum." Answer, Ex. D at 55.

         3)      <u>Discussion</u>

         Under California law where the Board fails to promptly set a primary term, "the court will deem it to have been fixed at the maximum" by default. <u>In re Rodriguez</u>, 14 Cal.3d 639, 654 (Cal. 1975); <u>see</u> <u>also</u> <u>In re Bobby Williams</u>, 53 Cal.App.3d 10, 17 (Cal. Ct. App.1975) (quoting <u>People v. Wingo</u>, 14 Cal.3d 169, 182 (Cal. 1975) for the proposition that the maximum term will be deemed to the fixed term where the Board omits or declines to fix the term of a prisoner serving an indeterminate sentence). Additionally, California law entitles petitioner to a base term only <u>after</u> he is found suitable for parole. <u>In re Stanworth</u>, 33 Cal.3d 176, 183 (Cal. 1982) (holding that under both the indeterminate and determinate sentencing law, a life prisoner must first be found suitable for parole prior to setting a parole date).

         Here, petitioner was deemed unsuitable for parole. The Board therefore did not violate his right to due process by failing to set a base term. <u>See</u> Cal.Code Regs., tit. 15, §§ 2401, 2402(c). Petitioner is therefore not entitled to relief on this claim.

    B.      <u>No Parole Policy</u>

         1)      <u>Description of Claim</u>

         Petitioner argues he was denied parole based on a "no parole policy." <u>Id.</u> at 9. His sole support for this argument is that the Board's reliance on "impermissible factors" supports an assumption "that the panel applied the Governor's 'no parole' policy." <u>Id.</u> at 9.

         2)      <u>State Court Opinion</u>

         The Los Angeles County Superior Court rejected this claim stating that "[w]hile [a 'no parole'] policy would run contrary to an inmate's due process rights, to establish cause for relief, a prospective parolee must demonstrate that there is no basis in fact for the decision, i.e., it

is not supported by any evidence. . . . Petitioner has failed to do so." Answer, Ex. D at 55.

        3) <u>Discussion</u>

        Petitioner has failed to provide any facts to support his claim of a "no parole policy." His argument is vague and conclusory and should be rejected on that basis. <u>See</u> <u>Jones v. Gomez</u>, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994)).

    C.    <u>Due Process</u>

        1)    <u>Description of Claim</u>

        Petitioner takes issue with several of the Board's findings as well as the information used to supports its denial. Specifically, petitioner takes issue with the Board's finding that his commitment offense was particularly egregious, the use of the District Attorney's opposition to support the denial, the Board's failure to consider the amount of time petitioner had been incarcerated, and the Board's use of his most recent psychiatric evaluation to support the denial. Petition at 4-9. Petitioner also argues that there was "no evidence whatsoever to support" a decision denying him parole. <u>Id.</u> at 6. In essence, petitioner is arguing that the Board's decision is not supported by the evidence.

        2)    <u>State Court Opinion</u>

        The Los Angeles County Superior Court rejected this argument finding:

> An inmate may also be unsuitable for parole if he has a prior record of violence. (Cal. Code Regs., tit. 15 §2402(c)(2). The record reflects petitioner was convicted of numerous property related crimes beginning in 1978 as a juvenile. In 1979 he was counseled and released for robbery. Later the same year he was placed in a community camp for six months for attempted robbery. Two months after his release from camp he committed the life offense. As such, there is "some evidence" petitioner is unsuitable because of a prior record of violence.
>
> An inmate may also be unsuitable for parole if he engages in "serious misconduct" during his incarceration. (Cal. Code Regs., tit. 15, §2402(c)(6); Cal. Code Regs., tit. 15, §3315.) The record

8

> reflects petitioner has received eleven 115 disciplinary violations since his incarceration. Among those violations are at least four that were weapons related. His last 115 violation was in 1996 for stimulants and sedatives. Although petitioner has not received a 115 violation since 1996, the eleven prior violations are "some evidence" he is unsuitable for parole because of serious institutional misconduct.
>
> * * *
>
> The Court rejects the remainder of petitioner's arguments. The Board noted the District Attorney's opposition to parole but did not cite it as a factor in denying petitioner parole. . . . The record reflects the Board considered petitioner's post conviction gains but still concluded petitioner would pose an unreasonable threat to public safety.

Answer, Ex. D at 54-55.

The state court did however agree with petitioner's argument that the Board erred in using his most recent psychiatric evaluation to support denial, finding that "[n]othing in the psychological evaluation suggests it does not support parole." Id. at 55.

/////

/////

        3)     Applicable Law

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging due process violations must first demonstrate that he or she was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).

However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." McQuillion, 306 F.3d at 901 (quoting Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)). In this regard, it is clearly established that California's parole scheme provides prisoners sentenced in California to a state prison term that provides for the possibility of parole with "a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." Irons v. Carey, 505 F.3d 846, 850-51 (9th Cir. 2007) (citing Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; and Allen, 482 U.S. at 377-78 (quoting Greenholtz, 442 U.S. at 12)). Accordingly, this court must examine whether the deprivation of petitioner's liberty interest in this case violated due process.

It has been clearly established by the United States Supreme Court "that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' Sass, 461 F.3d at 1128-29 (citing Superintendent v. Hill, 472 U.S. 445, 457 (1985)); see also Biggs, 334 F.3d at 915 (citing McQuillion, 306 F.3d at 904), or is "otherwise arbitrary," Hill, 472 U.S. at 457.

When assessing whether a state parole board's suitability decision was supported by "some evidence," the analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Thus, this court must:

> look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" in [petitioner's] case constituted an unreasonable application of the "some evidence" principle articulated in Hill.

Id.

California law requires that the Board "determine whether a prisoner is presently too dangerous to be deemed suitable for parole based on the 'circumstances tending to show

unsuitability' and the 'circumstances tending to show suitability' set forth in Cal.Code. Regs., tit. 15 § 2402(c)-(d)." Irons, 505 F.3d at 662-63.

The Irons court described the regulations as follows:

> [T]he circumstances tending to show that a prisoner is unsuitable include: (1) the commitment offense, where the offense was committed in "an especially heinous, atrocious or cruel manner"; (2) the prisoner's previous record of violence; (3) "a history of unstable or tumultuous relationships with others"; (4) commission of "sadistic sexual offenses"; (5) "a lengthy history of severe mental problems related to the offense"; and (6) "serious misconduct in prison or jail." Cal.Code. Regs., tit. 15 § 2402(c). Circumstances tending to show that a prisoner is suitable for parole include: (1) the prisoner has no juvenile record; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has shown remorse; . . . (6) the prisoner lacks any significant history of violent crime; . . . (8) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release"; (9) "[i]nstitutional activities indicate an enhanced ability to function within the law upon release." Cal.Code. Regs., tit. 15 § 2402(d).

Id. at 663 n.4.

In California, the overriding concern in determining parole suitability is public safety and the focus is on the inmate's current dangerousness. In re Dannenberg, 34 Cal. 4th 1061, 1086 (Cal. 2005); In re Lawrence, 44 Cal. 4th 1181, 1205 (Cal. 2008). The California Supreme Court recently stated:

> [T]he Penal Code and corresponding regulations establish that the fundamental consideration in parole decisions is public safety [and] the core determination of "public safety" . . . involves an assessment of an inmate's *current* dangerousness. . . . [A] parole release decision authorizes the Board (and the Governor) to identify and weigh only the factors relevant to predicting "whether the inmate will be able to live in society without committing additional antisocial acts." These factors are designed to guide an assessment of the inmate's threat to society, *if released*, and hence could not logically relate to anything but the threat *currently* posed by the inmate.

In re Lawrence, 44 Cal. 4th at 1205-06 (internal citations omitted). Accordingly, in reviewing a decision by the Board to deny parole to an inmate, "the relevant inquiry is whether some evidence supports the decision of the Board that the inmate constitutes a current threat to public

1 safety, and not merely whether some evidence confirms the existence of certain factual
2 findings." Id. at 1212 (citing In re Rosenkrantz, 29 Cal. 4th 616, 658 (Cal. 2002); In re
3 Dannenberg, 34 Cal. 4th at 1071; In re Lee, 143 Cal. App. 4th 1400, 1408 (2006)).

"The 'some evidence' standard is minimally stringent," and a decision will be upheld if there is any evidence in the record that could support the conclusion reached by the fact-finder. Powell, 33 F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986). However, "the evidence underlying the [ ] decision must have some indicia of reliability." Jancsek, 833 F.2d at 1390. See also Perveler, 974 F.2d at 1134. Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. Toussaint, 801 F.2d at 1105. The question is whether there is any reliable evidence in the record that could support the conclusion reached. Id.

        4)      Discussion

The Board relied on three factors in finding petitioner unsuitable for parole: the circumstances of the commitment offense, his pattern of escalating criminal history, and his record of serious misconduct.[1]

With respect to the circumstances of the commitment offense the Board found:

> First we have the offense carried out in a violent and cold-blooded manner. There were multiple victims, one was killed in the same incident. The offense was carried out in a manner which demonstrates a disregard for human life. The motive for the crime appears to be anger, it was a senseless crime.

Answer, Ex. B at 76-77.

The circumstances of the commitment offense are one of fifteen factors relating to an inmate's unsuitability or suitability for parole under California law. Cal.Code. Regs., tit. 15 §

---

[1] As noted above the Board also relied on petitioner's most recent psychological evaluation. The state court however found no evidence that report did not support suitability.

12

2402(c)(1)-(d). When denial is based on these circumstances the California courts have stated that:

> A prisoner's commitment offense may constitute a circumstance tending to show that a prisoner is presently too dangerous to be found suitable for parole, but the denial of parole may be predicated on a prisoner's commitment offense only where the Board can "point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released. [In re] Dannenberg, 34 Cal.4th [1061] at 1071, 23 Cal.Rptr.3d 417, 104 P.3d 783 (Cal.2005). Factors beyond the minimum elements of the crime include, inter alia, that "[t]he offense was carried out in a dispassionate and calculated manner," that "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and that "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Cal.Code. Regs., tit. 15 § 2402(c)(1)(B), (D)-(E)."

/////

Irons, 505 F.3d at 852-53; see also In re Weider, 145 Cal.App.4th 570, 588 (2006) (to support denial of parole, the "factors beyond the minimum elements of the crime" "must be predicated on "some evidence that the particular circumstances of [the prisoner's] crime-circumstances beyond the minimum elements of his conviction-indicated exceptional callousness and cruelty with trivial provocation, and thus suggested he remains a danger to public safety.")

The relevant inquiry therefore "is not merely whether an inmate's crime was especially callous, or shockingly vicious or lethal, but whether the identified facts are probative to the central issue of current dangerousness when considered in light of the full record before the Board or the Governor." In re Lawrence, 44 Cal. 4th at 1221; In re Dannenberg, 34 Cal. 4th at 1070-71.

As the state court found, the motive for petitioner's crime was very trivial. See Answer, Ex. D at 54. Petitioner attempted to rob the victim at gunpoint in return for only $500. The victim however foiled petitioner's attempt. Instead of continuing his flight from the crime scene petitioner paused for the sole purpose of deliberately shooting the victim.

In addition to the circumstance of the commitment offense the Board cited

13

petitioner's previous record of violence. The Board summarized petitioner's record as follows:

> The inmate does have prior criminality as a juvenile. He was 17 years old at the time of the instant offense. The pattern of criminal conduct was in fact escalating. His crimes [include] runaway auto theft, taking a vehicle without owner's consent, possession of a controlled substance, grand theft property, burglary, receiving stolen property, grand theft auto, taking a vehicle without the owner's consent, robbery, attempted robbery, and a camp placement. He had been released from camp just a short time prior to the instant offense.

Answer, Ex. B at 77.

Under California law, a previous record of violence is one factor that can indicate unsuitability. Cal.Code Regs., tit. 15 §2402 (c)(2). A previous record of violence is found where "[t]he prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age." Id.

The Board did not provide the details of petitioner's crimes so it is not clear that any of them involved violence. Nevertheless the crimes are quite serious and relevant to a determination of suitability when evaluated as part of the entire record before the Board.

Finally the Board relied on petitioner's history of engaging in serious misconduct during his incarceration. As the Board stated:

> In regards to discipline, he has received a total of 11 CDC 115s since his incarceration, the latest one being in 1996 for stimulants, sedatives, possession of marijuana, and hashish, but his other 115s starting back in 1982 possession of manufactured stabbing weapons, possession of weapon in '83, stabbing weapon '83, possession of an explosive part in '83, weapon in '83 again, these are all at San Quentin, disobeying orders, sedatives, conduct, participating in a work strike, stimulants and sedatives. Then that was in '95 and the later one in 1996. We acknowledge that it has been almost 10 years since his last CDC 115. However, he's been in custody since 1981 so it's 23 years roughly or 24.

Answer, Ex. B at 77-78.

Under California law, institutional behavior that evidences "serious misconduct" at any time is a circumstance tending to show unsuitability. See Cal. Code Regs. tit. 15, § 2402(c)(6). Petitioner's history of institutional misconduct includes multiple violations for

14

possession of illegal substances and weapons. While it is true that petitioner had remained discipline free for almost ten years that was less than half the total time he had been incarcerated.

When examined in totality, the identified facts of petitioner's commitment offense are probative to his current dangerousness when considered in light of the full record before the Board. That record included petitioner's serious criminal history and his institutional record showing multiple violations for serious misconduct.

Petitioner had a criminal history that included several instances of serious crimes and culminated in a senseless first degree murder. After his conviction he evidently did not learn from his mistakes and continued to engage in serious and dangerous misconduct for roughly another 15 years while incarcerated. The Board acknowledged petitioner's apparent change and encouraged him to continue on that path, stating quite directly, "[a]re you parolable, yeah, I can see that." Answer, Ex. B at 81. However, based on this record there was some evidence to support the Board's finding of unsuitability. The opinion of the Los Angeles County Superior Court affirming the finding of some evidence was therefore not unreasonable.

Petitioner's right to due process was not violated and he is not entitled to relief on this claim.

/////

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

15

that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 6, 2009

*Charlene H. Sorrentino*
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE